Filed 6/17/15  P. v. O'Deal CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076146 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F01312) |
| v. | |
| DREMON ROBERT O'DEAL, | |
| Defendant and Appellant. | |

A jury convicted defendant Dremon Robert O'Deal of three felonies, evading an officer (high speed chase), unlawful driving or taking of a vehicle, and receiving stolen property, and two misdemeanors, resisting a peace officer and driving without a license. The trial court sentenced defendant to two years eight months in state prison.

On appeal, defendant contends there is insufficient evidence that he was the driver to support any of the convictions except for the resisting an officer count, and that the denial of probation was an abuse of discretion.  We affirm.

1

BACKGROUND

*The Crimes*

On February 24, 2013, at approximately 11:30 a.m., Sacramento Police Sergeant Paul Freeman was in his patrol car when he saw a white BMW make a right turn at an intersection without stopping at the stop sign. He followed the BMW, activated his light, and chirped the siren, but the BMW accelerated to 40 miles per hour in a 25-mile-per-hour zone. Sergeant Freeman could not see the driver.

Sergeant Freeman activated the patrol car's overhead lights and sirens and pursued the BMW through the residential neighborhood. The BMW accelerated to 50 miles per hour. It crossed into the opposite lane of traffic and ran a stop sign while turning left. The BMW ran a red light and turned onto Natomas Boulevard.

The BMW weaved around the moderate traffic at about 90 miles per hour. Sergeant Freeman reduced his speed when he approached a signal light, as he could not keep pace with the BMW. The BMW swerved into the right turn lane and drove through the intersection. The driver soon lost control of the BMW, which spun 180 degrees and crashed, ending up facing north in a southbound lanes.

Sergeant Freeman stopped the patrol car and focused on the driver's side door of the BMW. A person later identified as Louis Santiago was seen by Sergeant Freeman exiting the driver's side rear door, wearing a dark-colored shirt and sporting shoulder length dreadlocks with blondish highlights on the ends. Two women exited from the other side of the BMW. Sergeant Freeman also saw defendant exiting from the driver's door. He described the driver as wearing a teal T-shirt and a teal beanie.

Defendant and Santiago ran off and jumped a large cinder block wall and into a residential neighborhood. Other officers caught them, and Sergeant Freeman identified defendant as the driver. Later that day, Sergeant Freeman determined that the BMW had been stolen during a residential burglary in the early morning hours prior to the pursuit.

2

A DVD of the pursuit taken from the camera in Sergeant Freeman's patrol car was played intermittently during his testimony. He assessed the video quality as "[p]oor," and it was not shot in high resolution. The People also presented a photograph of defendant from the day of his arrest, which showed him wearing a teal T-shirt.

*Sentencing*

According to the probation report, defendant was 20 years old at the time of sentencing. Defendant had prior juvenile adjudications for second degree burglary, battery with serious bodily injury, misdemeanor vandalism, assault against a custodial officer, unlawfully taking or driving a vehicle, and assault with a deadly weapon. Defendant had been raised by family, primarily an aunt, because his mother used drugs. He graduated from high school and had a one-year-old child with his girlfriend, who was pregnant with their second child. The probation officer recommended against probation and in favor of a prison term totaling two years eight months.

The defense argued for probation based on defendant's youth, his disadvantaged background, and his efforts to turn his life around, as shown by letters from himself and his great-grandmother.

The trial court denied probation, citing California Rules of Court, rule 4.414(b)(1)[1] [prior record of criminal conduct] and (b)(2) [prior performance on probation] and sentenced him to the middle term of two years for felony evasion and a consecutive eight-month term for the stolen vehicle offense.

---

[1]     Undesignated references to rules are to the California Rules of Court.

DISCUSSION

I

Defendant contends there is insufficient evidence that he was the driver to support the convictions for evading a peace officer (high speed chase), unlawful driving or taking of a vehicle, receiving stolen property, and driving without a license. We disagree.

"To determine whether the prosecution has introduced sufficient evidence to meet [the reasonable doubt] burden, courts apply the 'substantial evidence' test. Under this standard, the court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' [Citation.]" (*People v. Cuevas* (1995) 12 Cal.4th 252, 260-261, italics omitted.)

Defendant claims the video from Sergeant Freeman's patrol car fatally impeaches his testimony identifying defendant as the driver. According to defendant, "[w]hat the video reveals -- again, taken by an in-car camera located very close to Sergeant Freeman -- is that 'the driver' simply cannot be identified. If the video doesn't show which of the two men was the driver beyond a reasonable doubt, then Sergeant Freeman's testimony cannot do so, either." Since the convictions for evasion of a peace officer (high speed chase), vehicle theft, receiving stolen property, and driving without a license are predicated on defendant being the driver of the stolen BMW, he claims those convictions must be reversed.

Defendant's argument is based on a faulty premise: Sergeant Freeman saw only what the video showed. Having seen the video, we agree with Sergeant Freeman's testimony that it was of very poor quality. The colors are washed out, almost to the point

4

of nonexistence, and the resolution was much poorer than normal human eyesight.[2]  Also, the camera does not change its viewpoint, positioned straight ahead down the center of the patrol car, while Sergeant Freeman testified he focused on the driver's side door of the BMW.  What Sergeant Freeman saw during his pursuit was not what we (or the jury) saw in the video.

"The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions.  [Citations.]" (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366.)  In deciding whether substantial evidence supports the trial court's findings, we do not evaluate the credibility of witnesses; that is within the provenance of the trier of fact.  (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)  "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

The video shows two men running out of the driver's side of the car, which was turned around and facing the patrol car.  A man wearing lighter colored shorts was closer to the patrol car, while the man in the dark shirt was further away; both were running from the car and their paths did not cross.  Since the evidence showed defendant wore a teal shirt while the other male in the car, Santiago, wore a dark shirt, the jury could reasonably infer defendant exited the car from the driver's door while Santiago exited from the driver-side rear door, just as Sergeant Freeman testified.

Sergeant Freeman's testimony identifying defendant as the driver is sufficient evidence by itself.  Therefore, we conclude substantial evidence supports the convictions.

---

[2]    There is no evidence that Sergeant Freeman had substandard eyesight or any visual impairment that day.

II

Defendant contends it was an abuse of discretion for the trial court to deny probation and sentence him to state prison.

" 'All defendants are eligible for probation, in the discretion of the sentencing court [citation], unless a statute provides otherwise.' [Citation.] 'The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion. [Citation.]' [Citation.] 'In reviewing [a trial court's determination whether to grant or deny probation,] it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances.' [Citation.]" (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1311, disapproved on other grounds in *People v. Cook* (2015) 60 Cal.4th 922, 939.)

Defendant identifies various mitigating factors found in rule 4.414 which he asserts favor probation in this case. He asserts there was no evidence he would not be willing to comply with the terms and conditions of probation, if granted. (Rule 4.414(b)(3).) Defendant notes the letters to the trial court, from his great-grandmother and from himself, show he has made major and positive changes in his attitude and life since becoming a father. His letter to the court also shows defendant's ability to comply with the terms and conditions of probation. (Rule 4.414(b)(4).) Defendant claims probation would help him obtain employment, maintain his family obligations, (rule 4.414(b)(5)) and lessen the adverse consequences of an adult felony conviction. (Rule 4.414(b)(6).) Finally, he ignores the obvious, grave dangers to which he exposed Sergeant Freeman and the public during his high speed attempt to escape arrest for driving without a license in a stolen car, to claim there is nothing to suggest he would be a danger to others if not imprisoned. (Rule 4.414(b)(8).) Defendant concludes the trial

6

court abused its discretion "in not granting probation or even giving genuine consideration to the factors listed above and moving instead to a state prison alternative."

The trial court was aware of the aggravating and mitigating factors related to defendant. While it addressed only defendant's criminal record when denying probation, the trial court explained the other aggravating and mitigating factors related to defendant and the crimes when imposing the prison term. The trial court did not ignore these factors in denying probation. Instead, it considered whether to grant probation, a much simpler question, and reserved the bulk of its explanation for what it determined to be the closer question, the appropriate prison term to impose.

Only a single factor is required to justify a denial of probation. (*People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 12.) A trial court may reject or disregard any mitigating circumstance without stating reasons. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.) Defendant's extensive criminal record is more than sufficient to justify denying probation, even for a relatively young person such as himself. That the trial court analyzed the mitigating factors in the context of choosing the prison term rather than when denying probation is not an abuse of discretion.

DISPOSITION

The judgment is affirmed.


                                                  _____NICHOLSON_____, Acting P. J.


We concur:


_____ROBIE_____, J.


_____MURRAY_____, J.